UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **NASRIN AKHTAR SHEIKH, et al.,**  Plaintiffs,  v.  **REPUBLIC OF THE SUDAN, et al.,**  Defendants. | **Civil Action No. 14-2090 (JDB)** |
| **GEOFFREY GITHUI KINYUA, et al.,**  Plaintiffs,  v.  **REPUBLIC OF THE SUDAN, et al.,**  Defendants. | **Civil Action No. 14-2118 (JDB)** |
| **CALEB NDEDA CHOGO, et al.,**  Plaintiffs,  v.  **REPUBLIC OF THE SUDAN, et al.,**  Defendants. | **Civil Action No. 15-951 (JDB)** |

**MEMORANDUM OPINION**

If a defendant refuses on principle to appear in court, things usually do not end well for the defendant. But suppose we add two complicating factors. First, the lawsuit is clearly untimely under governing law. And second, the defendant is the Islamic Republic of Iran. Should a court rule against Iran in absentia? Or should the court consider the suit's timeliness on its own initiative? That is the question before this Court in all three of the above-captioned cases, in which plaintiffs seek judgments against Iran for supporting al Qaeda's 1998 U.S. embassy bombings in East Africa. Generally, it is up to the defendant to raise a timeliness defense. However, the Court

1

finds that respect for other sovereign nations, the Court's duty to independently assess claims of state-sponsored terrorism, and the practical effect of ignoring the statutory deadline weigh against granting default judgments against Iran on plainly untimely claims. Hence, for the reasons explained below, the Court will set aside the defaults and dismiss the claims against Iran in all three cases.

## I. BACKGROUND

On August 7, 1998, two truck bombs detonated outside the U.S. embassies in Nairobi, Kenya, and Dar es Salaam, Tanzania. The bombs killed more than two hundred people and injured thousands more. Beginning in 2001, several groups of plaintiffs began to sue Iran and Sudan, alleging that they had provided material support to the al Qaeda terrorists who had carried out the attacks. (The Court will refer to these suits collectively as the "Owens cases.") The plaintiffs relied on the "terrorism exception" embedded in the Foreign Sovereign Immunities Act (FSIA), 28 U.S.C. §§ 1602–11, which eliminates immunity in cases seeking damages against designated state sponsors of terrorism for (among other things) providing "material support or resources" for acts of "extrajudicial killing." 28 U.S.C. § 1605(a)(7) (2006).[1]

After initially defending in the first of the Owens cases, Sudan defaulted. Iran, meanwhile, never appeared, and so also defaulted. Following an ex parte hearing under 28 U.S.C. § 1608(e), the Court concluded that neither country was immune from suit, and that both were liable to the victims of the bombings. Owens v. Republic of Sudan, 826 F. Supp. 2d 128, 157 (D.D.C. 2011). The Court then referred the Owens cases to a number of special masters, who spent the next several years assessing what damages each of the hundreds of individual plaintiffs should be awarded.

---

[1] Congress later amended this exception, codifying the new version at 28 U.S.C. § 1605A. National Defense Authorization Act (NDAA) of 2008, Pub. L. No. 110-181, § 1083, 122 Stat. 3, 338–44 (2008).

Between March and October 2014, this Court entered final judgments in the Owens cases, awarding a total of over $10 billion in compensatory and punitive damages. On appeal by Sudan—which sought to reenter the cases after judgments were entered—the D.C. Circuit affirmed most of this Court's judgments against Sudan, but vacated the punitive damages award and certified a question of District of Columbia law to the D.C. Court of Appeals. Owens v. Republic of Sudan, 864 F.3d 751, 825 (D.C. Cir. 2017). Because Iran never appeared, the judgments against it were not appealed; thus, the Court's 2014 decisions remain final as to Iran.

The three instant cases are nearly identical to the Owens cases, but were filed more than thirteen years later, in December 2014 (Sheikh and Kinyua) and June 2015 (Chogo). According to the allegations in the complaints, which the Court for now assumes are true, plaintiffs Farhat Mahmood Sheikh, Moses Magothe Kinyua, and Caleb Ndeda Chogo were victims of the Nairobi embassy bombing. Sheikh worked for the U.S. government and was killed in the blast. Compl. [Sheikh ECF No. 1] ¶ 9. Sheikh's estate, joined by his widow and children (all British citizens), alleged that Sudan and Iran were responsible for the bombing and are liable for Sheikh's death, his family's emotional distress, and their loss of Sheikh's society. Id. ¶¶ 9–22, 70–85. Kinyua also worked for the U.S. government and was killed in the blast. Compl. [Kinyua ECF No. 1] ¶ 9. Kinyua's brothers, sisters, and informally adopted son (all Kenyan citizens) alleged that Sudan and Iran were responsible for the bombing and are liable for their emotional distress and loss of Kinyua's society. Id. ¶¶ 9–24, 74–77. Chogo likewise worked for the U.S. government and was injured in the attack. Compl. [Chogo ECF No. 1] ¶ 9. He and forty-seven other alleged victims bring suit on their own behalf, along with ten family members of other alleged victims, alleging that Sudan and Iran were responsible for the bombing and are liable for assault and battery,

3

emotional distress, aiding and abetting terrorism, and civil conspiracy.  Id. ¶¶ 9–66, 69–75, 150–168.

By the time plaintiffs filed these cases, Sudan had begun participating in the various FSIA suits against it.  After learning of the Sheikh and Kinya suits, Sudan moved to dismiss them both as untimely.  The Court granted Sudan's motion.  See Sheikh v. Republic of Sudan, 172 F. Supp. 3d 124, 132 (D.D.C. 2016).[2]  Iran, by contrast, has never appeared in any of the cases arising out of these bombings, including these three.  The Court asked all three sets of plaintiffs to show cause why their claims against Iran should not also be dismissed as untimely, see Order [Chogo ECF No. 11]; Order [Kinyua ECF No. 29]; Order [Sheikh ECF No. 30], and plaintiffs in all three cases responded, see Mem. Per Court's Mar. 24, 2016 Order to Show Cause Why This Action Should Not Be Dismissed ("Chogo Mem.") [Chogo ECF No. 12]; Pls.' Supp. Br. Regarding Why Pls.' Claims Against the Republic of Iran Should Not Be Dismissed ("Kinyua Mem.") [Kinyua ECF No. 31]; Mem. Per Court's Mar. 24, 2016 Order ("Sheikh Mem.") [Sheikh ECF No. 32].  Plaintiffs have also filed default judgment motions against Iran and the Iranian Ministry of Information and Security.  See Pls.' Mot. for Judicial Notice and for Entry of Default J. Against Iranian Defs. [Chogo ECF No. 24] [Kinyua ECF No. 27] [Sheikh ECF No. 28].  Those motions are fully briefed and ripe for joint decision, the issues in all three cases being effectively identical.

## II.  DISCUSSION

Before it can reach the merits of plaintiffs' default judgment motions, the Court must determine whether it will consider the timeliness of their lawsuits.[3]  The statute of limitations for

---

[2] The Chogo plaintiffs have not yet received return of service from Sudan.  See Notice Per Court's Feb. 16, 2018 Order [Chogo ECF No. 25].

[3] The D.C. Circuit has clarified that a court may "properly move[] the timeliness issue to the head of the line" in an FSIA case, so the Court need not first determine whether there is statutory subject-matter jurisdiction.  Chalabi v. Hashemite Kingdom of Jordan, 543 F.3d 725, 728 (D.C. Cir. 2008).

4

claims brought under the terrorism exception to foreign sovereign immunity is codified at 28 U.S.C. § 1605A(b). That provision reads, in relevant part:

> An action may be brought or maintained under this section if the action is commenced, or a related action was commenced under section 1605(a)(7) (before the date of the enactment of this section) . . . not later than the latter of—
> **(1)** 10 years after April 24, 1996; or
> **(2)** 10 years after the date on which the cause of action arose.

28 U.S.C. § 1605A(b). Thus, an action is timely if either the action itself is timely or a "related action" was timely. If the statute of limitations has run, but the defendant has not entered an appearance, the Court must decide whether to raise the timeliness issue sua sponte.

### A. These Actions Were Not Timely

To be timely in their own right, these actions must have been commenced not later than either (1) April 24, 2006, or (2) "10 years after the date on which the cause of action arose." 28 U.S.C. § 1605A(b). The three actions were filed in December 2014 and June 2015, long after the April 24, 2006 deadline. Moreover, "the plaintiffs' causes of action arose on August 7, 1998, the date of the embassy bombings"; therefore, "the last day to file a new action under § 1605A was August 7, 2008, ten years after the bombings." Owens, 864 F.3d at 800. Because plaintiffs did not file these actions until more than six years after that deadline, none were timely under § 1605A(b).

Nor were any of the cases related to another timely action. The FSIA allows plaintiffs to hitch their wagons to another suit that was timely filed under the predecessor provisions to the NDAA if the cases "aris[e] out of the same act or incident," and if plaintiffs filed "within 60 days of the entry of judgment in the original action or of the enactment of the NDAA, whichever was later." Owens, 864 F.3d at 765 (quoting NDAA § 1083(c)(3)). Plaintiffs in all three actions point to the Owens cases as the ones to which these actions are "related." See Sheikh, 172 F. Supp. 3d

5

at 131; Chogo Mem. at 11. The instant cases arise out of the same incident as did the Owens cases: the 1998 embassy bombings in Kenya and Tanzania. However, the Court has already determined that the Sheikh and Kinyua plaintiffs did not file within sixty days of the judgments in any of the Owens cases that had themselves been filed under the relevant predecessor provisions. See Sheikh, 172 F. Supp. 3d at 132. The Chogo plaintiffs, meanwhile, filed their suit seven months after Sheikh and Kinyua, even further from the sixty-day deadline.[4] As the D.C. Circuit denied Sudan's attempt to vacate the Owens judgments, there is no new judgment on which plaintiffs can hang their hats. Cf. Chogo Mem. at 11 ("If the United States Court of Appeals for the District of Columbia agrees with Sudan, then a new judgment will be entered, thereby making the complaints filed in this case timely under Section 1083(c)(3).").

Because none of the instant cases are either timely in their own right or related to timely-filed actions, all three run afoul of the FSIA's statute of limitations. The question remains: what, if anything, should be done about that?

### B. The Court Will Exercise Its Discretion to Dismiss the Claims Against Iran

Statutes of limitations are affirmative defenses, meaning that normally a defendant must explicitly raise the issue early on. See Fed. R. Civ. P. 8(c). If the defendant does not do so, then—in the ordinary case—the issue is forfeited. See Day v. McDonough, 547 U.S. 198, 202 (2006). Because the FSIA's statute of limitations does not implicate the Court's jurisdiction,[5] the Court is

---

[4] The Chogo plaintiffs implicitly insist, as the Sheikh and Kinyua plaintiffs explicitly did, that the last relevant judgment was actually entered on October 24, 2014, in the case of numerous intervenors to the Owens actions. See Chogo Mem. at 2 n.1, 11 n.8; see also Kinyua Mem. at 4 (questioning whether the "purported untimeliness of Plaintiffs' claims" is readily apparent for this reason). The Court has already determined that the judgment in question does not count for purposes of the NDAA, see Sheikh, 172 F. Supp. 3d at 131–32, and in any event the Chogo plaintiffs concede that their case falls outside the sixty-day limit even from that later judgment, see Chogo Mem. at 11 n.8.

[5] Some statutes of limitations are jurisdictional: because Congress has written those limitations in such a way as to govern the courts' very power to hear a case, courts must dismiss any case that falls afoul of those time limits. See Owens, 864 F.3d at 801. However, the D.C. Circuit has determined that the FSIA's statute of limitations is not jurisdictional. Id. Therefore, the normal rules apply.

6

"under no obligation to raise the time bar sua sponte." Day, 547 U.S. at 205. However, "courts have the discretion . . . to raise on their own initiative certain nonjurisdictional barriers to suit," including statutes of limitations. United Student Aid Funds, Inc. v. Espinosa, 559 U.S. 260, 277 n.14 (2010). In the mine run of cases, courts should refrain from exercising this discretion, relying on the adversarial process to raise any non-jurisdictional issues in dispute. See Eriline Co. S.A. v. Johnson, 440 F.3d 648, 656–57 (4th Cir. 2006). But sua sponte consideration "might be appropriate in special circumstances," particularly when an affirmative defense implicates the interests of the judiciary as well as the defendant. Arizona v. California, 530 U.S. 392, 412 (2000).

The fate of these three cases hinges on whether the circumstances presented here— untimely FSIA terrorism claims brought against an absent sovereign—are "special" enough to warrant sua sponte consideration of the statute of limitations. On this question, the ground is but lightly trodden. The Fourth Circuit has held that district courts may consider sua sponte res judicata defenses in FSIA default judgment actions. See Clodfelter v. Republic of Sudan, 720 F.3d 199, 209 (4th Cir. 2013). And earlier in the lives of two of the instant cases, this Court suggested that the same might be true of statute of limitations defenses. See Sheikh, 172 F. Supp. 3d at 132–33. But only one case in this circuit has squarely addressed the precise question at issue, and there the court "decline[d] whatever discretionary authority it may have to raise the defense of limitations on [the absent sovereign's] behalf." Worley v. Islamic Republic of Iran, 75 F. Supp. 3d 311, 331 (D.D.C. 2014).[6] For several reasons, the Court disagrees with the reasoning in Worley, and determines that it should consider the statute of limitations here.

---

[6] The Chogo plaintiffs point to one other district court decision declining to consider a statute of limitations defense in an FSIA default scenario. See Chogo Mot. at 6 (citing Rubin v. Islamic Republic of Iran, 408 F. Supp. 2d 549, 555 (N.D. Ill. 2005), aff'd, 436 F. Supp. 2d 938 (N.D. Ill. 2006), rev'd and remanded, 637 F.3d 783 (7th Cir. 2011). However, the court in Rubin was merely rejecting the suggestion that the FSIA required plaintiffs to prove that no affirmative defense applied. Such a rule, the court declared, "impermissibly forces this Court to consider affirmative defenses sua sponte and impermissibly forces Plaintiffs to shoulder the burden of disproving affirmative defenses not even raised by Defendant." Rubin, 408 F. Supp. 2d at 555. But the question before this Court is whether

7

To begin with, these cases implicate concerns about international comity that rarely appear in the ordinary lawsuit.[7] Whatever Iran's misdeeds, it remains a foreign country equal in juridical stature to the United States, and the federal courts must respect "the independence, the equality, and dignity of the sovereign." The Schooner Exch. v. McFaddon, 11 U.S. (7 Cranch) 116, 123 (1812). Comity is "neither a matter of absolute obligation, on the one hand, nor of mere courtesy and good will, upon the other." Banco Nacional de Cuba v. Sabbatino, 376 U.S. 398, 409 (1964). Thus, courts are not required to dismiss untimely suits against foreign sovereigns, particularly since Congress has not rendered the FSIA's statute of limitations jurisdictional. However, "the reciprocal foreign litigation interests of the United States and a concern for judicial efficiency support [a] district court's sua sponte consideration of" the statute of limitations. Clodfelter, 720 F.3d at 209; see Sheikh, 172 F. Supp. 3d at 133; cf. Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S. 241, 261 (2004) (stating, in the document-production context, that "comity and parity concerns may be important as touchstones for a district court's exercise of discretion in particular cases"); Republic of Argentina v. NML Capital, Ltd., 134 S. Ct. 2250, 2258 n.6 (2014) (similar).

Comity concerns are further heightened by the procedural posture of these cases. Sua sponte dismissals are more permissible in default judgment proceedings: the affirmative defense at issue has not actually been waived, and the normal adversarial model upon which the concept of affirmative defenses is based has broken down. See, e.g., Taiwan Civil Rights Litig. Org. v. Kuomintang Bus. Mgmt. Comm., 486 F. App'x 671, 671–72 (9th Cir. 2012); De Santis v. City of

---

to exercise its discretion to consider the statute of limitations, not whether it is required to consider the statute of limitations.

[7] "Comity refers to the spirit of cooperation in which a domestic tribunal approaches the resolution of cases touching the laws and interests of other sovereign states." Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Court for S. Dist. of Iowa, 482 U.S. 522, 544 n.27 (1987). "[T]he federal judiciary has relied on principles of comity and international law to protect foreign governments in the American legal system. This approach . . . preserves the flexibility and discretion of the political branches in conducting this country's relations with other nations." Price v. Socialist People's Libyan Arab Jamahiriya, 294 F.3d 82, 97 (D.C. Cir. 2002).

8

New York, No. 10 Civ. 3508 (JPO), 2014 WL 228659, at *5 (S.D.N.Y. Jan. 22, 2014). Moreover, the D.C. Circuit has developed "strong policies favoring the resolution of genuine disputes on their merits," such that default judgments are disfavored. Jackson v. Beech, 636 F.2d 831, 835 (D.C. Cir. 1980). This is doubly so when the absent defendant is a foreign sovereign. See FG Hemisphere Assocs., LLC v. Democratic Republic of Congo, 447 F.3d 835, 838–39 (D.C. Cir. 2006); First Fid. Bank, N.A. v. Gov't of Antigua & Barbuda—Permanent Mission, 877 F.2d 189, 196 (2d Cir. 1989); Practical Concepts, Inc. v. Republic of Bolivia, 811 F.2d 1543, 1551–52 & n.19 (D.C. Cir. 1987); Gilmore v. Palestinian Interim Self-Gov't Auth., 675 F. Supp. 2d 104, 109 (D.D.C. 2009); Acree v. Republic of Iraq, 658 F. Supp. 2d 124, 127 (D.D.C. 2009); Weinstein v. Islamic Republic of Iran, 175 F. Supp. 2d 13, 20 (D.D.C. 2001).

Thus, "in exercising its discretion [the Court] must be particularly sensitive to suits involving foreign states, even those found to be state sponsors of terrorism." Weinstein, 175 F. Supp. 2d at 20. Indeed, particular care must be taken with state-sponsored terrorism claims, since the FSIA strikes a "careful balance" between comity and accountability, Rubin v. Islamic Republic of Iran, 138 S. Ct. 816, 822 (2018), and some "considerations of sovereign immunity . . . pertain notwithstanding [a] default," Miango v. Democratic Republic of Congo, No. CV 15-1265 (ABJ), 2018 WL 446418, at *3 (D.D.C. Jan. 16, 2018). The comity owed to foreign sovereigns, particularly in default scenarios, thus counsels in favor of raising the timeliness issue here.

Another consideration is the courts' duty to independently weigh FSIA claims. The text of the FSIA states that "[n]o judgment by default shall be entered . . . against a foreign state, a political subdivision thereof, or an agency or instrumentality of a foreign state, unless the claimant establishes his claim or right to relief by evidence satisfactory to the court." 28 U.S.C. § 1608(e). The FSIA thus places the burden on the plaintiff to establish her claim even in the case of a

9

default—"a special protection" identical to that provided to the United States in default judgment actions. Jerez v. Republic of Cuba, 775 F.3d 419, 423 (D.C. Cir. 2014); see Fed. R. Civ. P. 55(d). Unlike for the run-of-the-mill default, the FSIA obliges courts to interrogate plaintiffs' claims, see Roeder v. Islamic Republic of Iran, 333 F.3d 228, 232 (D.C. Cir. 2003), and "leaves it to the court to determine precisely how much and what kinds of evidence the plaintiff must provide," Han Kim v. Democratic People's Republic of Korea, 774 F.3d 1044, 1047 (D.C. Cir. 2014).

Given this independent screening requirement, it is appropriate for a district court to address clear violations of the FSIA statute of limitations. Courts can and do exercise discretion to dismiss untimely claims sua sponte in other contexts in which courts play a similar gatekeeping function. See, e.g., Day, 547 U.S. at 209 (habeas petitions); United States v. Mitchell, 518 F.3d 740, 750 (10th Cir. 2008) (notices of appeal); Buchanan v. Manley, 145 F.3d 386, 388 n.4 (D.C. Cir. 1998) (complaints filed in forma pauperis); cf. Owens, 864 F.3d at 808 (addressing non-jurisdictional issue because "[t]he question presented is 'purely one of law important in the administration of federal justice' . . . and 'resolution of the issue does not depend on any additional facts not considered by the district court.'" (citations omitted)). Likewise, courts in this district take seriously their responsibility under the FSIA and often explicitly determine that claims are timely even in default scenarios. See, e.g., Hekmati v. Islamic Republic of Iran, 278 F. Supp. 3d 145, 157 (D.D.C. 2017); Shoham v. Islamic Republic of Iran, No. 12-cv-508 (RCL), 2017 WL 2399454, at *16 (D.D.C. June 1, 2017); Moradi v. Islamic Republic of Iran, 77 F. Supp. 3d 57, 64 & n.5 (D.D.C. 2015); Estate of Doe v. Islamic Republic of Iran, 808 F. Supp. 2d 1, 16–17 (D.D.C. 2011); Beer v. Islamic Republic of Iran, No. 08-cv-1807 (RCL), 2010 WL 5105174, at *7 & n.4 (D.D.C. Dec. 9, 2010); Wachsman ex rel. Wachsman v. Islamic Republic of Iran, 603 F. Supp. 2d 148, 155 (D.D.C. 2009). Considering timeliness is thus "of a piece with—if not necessarily

compelled by"—the Court's duty to evaluate plaintiffs' claims under the FSIA. Sheikh, 172 F. Supp. 2d at 133; see Clodfelter, 720 F.3d at 210. Hence, the Court's unusual gatekeeper role supports looking at the statute of limitations here.

Finally, there are good practical reasons for bringing up timeliness sua sponte. The Worley court declined to exercise its discretion to dismiss sua sponte because it felt that Iran had to "take the consequences" of its choice not to appear. 75 F. Supp. 3d at 331. Plaintiffs argue that the same logic should apply here, given that Iran is perfectly happy to litigate cases that do not involve terrorism charges. Chogo Mem. at 7–11; Kinyua Mem. at 3–4; Sheikh Mem. at 5–6. But plaintiffs in FSIA cases are making conscious strategic decisions as well. And without some policing of time limits, plaintiffs may seek to exploit prior default decisions finding nations liable for certain conduct to later pursue large damages awards decades after the fact. Worley itself illustrates this concern. The plaintiffs in that case sued Iran in December 2012 for its role in the October 1983 bombing of the U.S. Marine barracks in Beirut—a twenty-nine-year gap between injury and complaint. See Worley, 75 F. Supp. 3d at 318. To find liability, the court relied on evidence from a case decided a decade earlier. Id. at 320. The present cases are similarly worrisome: all three were filed over sixteen years after the events giving rise to the suits, see Sheikh, 172 F. Supp. 3d at 127; Chogo Compl. at 49, and all three rely for most of their evidence on cases filed thirteen years previously, see Owens, 864 F.3d at 765. In this way, plaintiffs can continue piggybacking off of older decisions for decades to extract multimillion dollar judgments from absent sovereigns.

For how long should such claims be allowed? From the standpoint of the judicial branch, only two principled time limits present themselves: either the ten-year statute of limitations Congress has imposed, or no time limit at all. After all, if a sixteen-year (or a twenty-nine-year) gap is acceptable, there is little reason to prohibit suits brought forty, fifty, or more years after the

fact.[8] The claimants could easily glean evidence of a defendant's culpability by dusting off old volumes of the Federal Supplement. As long as each crop of plaintiffs could show that they were victims or proper third-party claimants, they could continue racking up sizable damages awards for decades in response to a single act.[9] Not to mention the accoutrements that come with a judgment: attempts at worldwide asset discovery, see NML Capital, 134 S. Ct. at 2258, and tussles over attaching property either here, see Rubin, 138 S. Ct. at 821, or abroad, see Peterson v. Islamic Republic of Iran, 876 F.3d 63, 92 (2d Cir. 2017), to satisfy that judgment.

None of this, of course, is to defend the indefensible nations who defy both the laws of mankind and the authority of American courts. Nor is it to suggest that the practical concerns just outlined would justify sua sponte consideration of non-jurisdictional defenses in the ordinary case. But long experience reminds us that judgments against other nations or their citizens often have serious import for American foreign relations. See, e.g., Treaty of Paris, Gr. Brit.-U.S., art. V, Sept. 3, 1783, 8 Stat. 80 ("Congress shall earnestly recommend it to the legislatures of the respective states, to provide for the restitution of all estates, rights, and properties, which have been confiscated, belonging to real British subjects . . . ."); Oona A. Hathaway & Scott J. Shapiro, The Internationalists 33–35 (2017) (describing the role in fomenting the Mexican-American War played by unpaid judgments, awarded by an international arbitration panel, for debt claims against

---

[8] While it may seem far-fetched to imagine cases filed so long after an injury, it is far from impossible. Substantive tort law governs who may bring FSIA suits, see Owens, 864 F.3d at 807; thus, in some cases, a victim's estate or surviving relatives can sue under the FSIA even if the victim lives out a full life after being injured long ago. Of course, the perpetrator would have to remain a state sponsor of terrorism. See 28 U.S.C. § 1605A(a)(2)(A)(i)(I).

[9] Such decades-late claims might appear to fall prey to laches, a doctrine that prohibits "unreasonable, prejudicial delay in commencing suit." Petrella v. Metro-Goldwyn-Mayer, Inc., 134 S. Ct. 1962, 1967 (2014). But FSIA actions seek damages, a quintessential legal remedy, and "application of the equitable defense of laches in an action at law would be novel indeed." Oneida Cty., N.Y. v. Oneida Indian Nation of New York State, 470 U.S. 226, 244 n.16 (1985); see also Petrella, 134 S. Ct. at 1973 ("Both before and after the merger of law and equity in 1938, this Court has cautioned against invoking laches to bar legal relief." (footnote omitted)). Even if it did apply, laches is itself an affirmative defense. See Fed. R. Civ. P. 8(c)(1). Attempting to use laches to avoid the statute of limitations quandary is like attempting to flee an escaped tiger by running into the lion's den.

Mexico); see also Br. for the U.S. as Amicus Curiae Supporting Resps. at 11, Rubin, 138 S. Ct. 816 (No. 16-534) (noting "the reciprocity and other foreign-relations repercussions" of allowing plaintiffs to execute judgments against Iran by seizing Persian artifacts in American museums). The few countries subject to the FSIA's terrorism exception are also those with whom the United States has some of its most delicate diplomatic relationships. The possibility of nearly endless litigation takes on a new and more troubling dimension when paired with the murky foreign policy consequences of enabling untimely judgments.

Ultimately, considering the timeliness of an FSIA claim sua sponte is a discretionary determination, and it is justified in this instance. The Court's decision today ignores neither "the fundamental rule that statutes of limitations are generally treated as affirmative defenses that may be waived," nor "Congress's determination that the statute of limitations is not a requirement for exercise of subject matter jurisdiction." Worley, 75 F. Supp. 3d at 331. Rather, it leavens those concerns with a respect for Congress's choice to set time limits on other sovereigns' liability—and, more generally, for the delicate balance Congress has struck in the FSIA between comity and culpability. In this instance, "where 'the facts supporting the statute of limitations defense are set forth in the papers plaintiff[s] [themselves] submitted,'" Walters v. Indus. & Commercial Bank of China, Ltd., 651 F.3d 280, 293 (2d Cir. 2011) (citation omitted), the Court will not grant default judgments because of the patent untimeliness of these actions.

## **CONCLUSION**

Congress may have eliminated Iran's sovereign immunity, but it did not deny Iran's sovereignty. Like all state sponsors of terrorism, Iran is liable to American victims of the crimes it has committed or abetted. Yet as long as it remains a state, Iran is entitled to a certain baseline of respect from American courts. Particularly given the fraught relationship between the United

13

States and Iran, courts must take seriously both the comity due between nations and the duty to independently scrutinize default judgment claims under the FSIA. Hence, for the reasons explained above, the Court will deny plaintiffs' motions for default judgments and instead dismiss the claims against Iran as untimely in all three cases. Because the Court has already dismissed the Sheikh and Kinyua plaintiffs' claims against Sudan, their actions will be dismissed with prejudice. The Chogo plaintiffs have yet to receive return of service from Sudan nearly two years after serving process, perhaps because of prior confusion among Sudan's counsel over who was to be served. See Notice Per Court's Feb. 16, 2018 Order. The Chogo plaintiffs therefore will have one month to serve process once more, either through Sudan's counsel or directly to Sudan itself. A separate order to this effect will issue in each of these cases.

/s/
JOHN D. BATES
United States District Judge

Dated: March 30, 2018